## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

Rhonda Abbott,                    :
                                  :
                   Plaintiff,     :        **Hon. Joseph H. Rodriguez**
                                  :
        v.                        :        Civil Action No. 11-4851
                                  :
Atlantic City, et. al.            :
                                  :        **Opinion**
                   Defendants.    :
_____  :

  This matter comes before the court Defendants' Motion for Summary Judgment. The Court has considered the written submissions of the parties and the arguments advanced orally at the February 26, 2015 hearing in this matter.  During that hearing, counsel for Plaintiff made several concessions that counsel attempted to retract by way of letter dated March 11, 2015.  Plaintiff has filed additional submissions, including one on May 13, 2015 which have been considered.

## I.  Background

  Plaintiff Rhonda Abbott, who is hearing impaired, alleges that the City of Atlantic City, several Atlantic City police officers, and the Director of Gardner's Basin, violated her rights under the American with Disabilities Act ("ADA"), the New Jersey Law Against Discrimination ("NJLAD"), and the Fourth and Fourteenth Amendment of the United States Constitution.

  On August 26, 2009, Plaintiff claims she attempted to visit the Gardner's Basin area of Atlantic City New Jersey.  Plaintiff utilizes a service dog.[1]  She claims she was

---

[1] There is a dispute over whether Plaintiff is hearing impaired and whether her service dog has qualifying paperwork. For purposes of this Opinion, the Court assumes Plaintiff qualifies as disabled and that her service dog meets the requirements.

denied access to the Atlantic City Aquarium and the police were called.  Then, Plaintiff
went to the Back Bay Ale House where she claims that she was harassed by the staff.
Again, the police were called and Plaintiff was arrested by Officers Herrerias and
Clayton and charged with disorderly conduct and resisting arrest. Ex. C.

During Plaintiff's arrest and transport, Officer Herrerias claims that Plaintiff
purposefully spit phlegm on him. Herrerias Dep. 13-15.  As a result, he placed a see-
through mesh mask over Plaintiff's face to curtail the spitting. Plaintiff claims that the
mask was not see through and was fastened around her neck with the strings tied in an
overly tight manner, precluding her from using her sight.  In addition, she argues that
she did not voluntarily spit on Herrerias, but that the expelled phlegm was the product
of a summer cold, over which she had no control. <u>See</u> Abbott Dep., p. 182; Pl. Answer to
Interrogatories.  Plaintiff also claims that, once at the police station, she was struck by
several police officers, forcibly handled, and made to walk without assistance with the
mask on.

Plaintiff's Complaint is unclear as to which claims she asserts against each of the
Defendants and it fails to detail the nature of the violation as to each defendant.  Listed
in the caption of the Complaint as Defendants are the City of Atlantic City ("City"),
Atlantic City Police Department ("Police Department"), Police Officer Heidi Clayton
("Clayton"), Police Officer R. Bouffard ("Bouffard"), Police Officer William Herrerias
("Herrerias"), Police Officer H. Stanton ("Stanton"), Chief of Police John Mooney III
"Mooney"), Jack Keith, as the Executive Director Atlantic City Historic Waterfront
Foundation ("Keith"), and John Does A-Z.  <u>See</u> Complaint, generally. The Complaint

itself, never identifies Officer Stanton as a Defendant in the "Parties" section, but refers to him as an actor, but not a defendant, in Count VIII. Id.

The Complaint alleges eight counts, each with vague description.  Count I alleges claims under the NJLAD, the "federal Americans with Disabilities Act[,]" and Rehabilitation Act against the City, the Police Department, Keith, Clayton, Bouffard, and Herrerias. Id., ¶¶8-12.  Count II alleges that the City, the Police Department and Clayton, Bouffard, and Herrerias deprived Plaintiff "of her freedom and liberty without proper justification" in violation of the NJLAD, "Federal Rehabilitation Act, 42 U.S.C. §1983," and the ADA. Id. at ¶¶13-15. Count III alleges that the City, the Police Department and "aforementioned police officers" deprived Plaintiff of her rights under the Federal and State Constitutions, "including but not limited to the LAD, federal Americans with Disabilities Act, Rehabilitation Act, and 42 U.S.C. sec. 1983." Id. at 17. Count IV alleges violations of the "NJ LAD, federal ADA, Rehabilitation Act, and 42 sec. 1983." Id. at 21.  Count IV claims that the City, the Police Department, Officer Herrerias and "others" placed a mask over Plaintiff's face causing physical and mental injury. Id. ¶¶19-21.  Count V appears to allege a failure to train claim; in it Plaintiff states that the City, the Police Department and Mooney "in his official capacity, are responsible for the aforementioned civil rights violations that the employees of Gardner's Basin and officers of the Atlantic City Police Department were not properly trained in how to interact with the hearing impaired, the use of service dogs, and the rights of the disabled." Id. at ¶23. Count VI alleges claims against the John Doe police officers as plead in Counts I through IV. Id. at ¶¶24-25. Count VII appears to allege a claim under the ADA, Rehabilitation Act and/or Violations of the Fourth and/or Fourteenth Amendment(s) pursuant to

§1983, stating the City, the Police Department, "and its Officers gave no effective communication despite Plaintiff's disability." Id. at ¶27.  Finally, Count VIII incorporates the preceding counts and claims that "Officer Stanton and or John Doe(s) fictitious names of Defendants A-Z physically struck Plaintiff." Id. at ¶ 30.

During oral argument, the Court noted the confusion caused by the poorly drafted Complaint and engaged Plaintiff's counsel in a discussion of the relevant claims as to each Defendant.  The Court incorporates that discussion and counsel's explanation here. In addition, the Court directed Plaintiff to provide additional briefing as to the concessions made on the record. (See Dkt. No. 86).

Counsel filed a supplemental brief and appends a chart to his brief, to further illustrate the nature of the claim(s) alleged as to each defendant. (See Dkt. No. 88). According to Plaintiff's chart, she alleges claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 ("ADA"), and the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 ("NJLAD"), violations of the Civil Rights Act of 1871, and 42 U.S.C. § 1983, against the City, the Police Department, the "Aquarium," Keith, Clayton, Bouffard, Herrerias, and Mooney.  In addition, Plaintiff alleges claims of False Arrest and Imprisonment, Malicious Prosecution, violations of the Fourth and Fourteenth Amendments and 42 U.S.C. §1983 against Defendants Clayton, Bouffard, Herrerias. Plaintiff alleges a claim of Excessive Force against Herrerias and a Failure to Train claim against the City, the Police Department, and the "Aquarium."

## II.    <u>Summary Judgment Standard</u>

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  <u>Pearson v. Component Tech. Corp.</u>, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)); <u>accord</u> Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  <u>Id.</u>  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  <u>Id.</u>; <u>Maidenbaum v. Bally's Park Place, Inc.</u>, 870 F.

Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the finder of fact.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   Analysis

As a preliminary matter, summary judgment is granted as to the claims against unnamed John Does A-Z because they have not been identified and discovery is complete.[2]  Summary judgment is also granted as to as the claims pursuant to §1983 alleged against Mooney, Clayton, Herrerias, Stanton, and Bouffard in their official capacity.  It is well established that "neither a State nor its officials acting under their official capacities are 'persons' under § 1983."  Will v. Michigan Dep't of State Police, 491

---

[2] "Courts will allow claims based upon 'fictitious' defendants because they may be found and named later through the discovery process." K.J. ex rel. Lowry v. Div. of Youth & Family Servs., 363 F.Supp.2d 728, 740 (D.N.J. 2005) (citing Alston v. Parker, 363 F.3d 229, 233 n. 6 (3d Cir. 2004)). Where "it is clear that, if after a reasonable period of discovery a plaintiff has not identified the fictitious defendant, the court may dismiss the fictitious defendant." Martin v. Comunale, Civ. 03–06793, 2006 WL 208645, at *13 (E.D. Pa. Jan. 18, 2006); see also Atlantic Used Auto Parts v. City of Philadelphia, 957 F. Supp. 622, 625 (E.D. Pa 1997) (holding "fictitious party names may be used 'at least until reasonable discovery permits the actual defendants to assume their places ...,' however, ... '[f]ictitious names must eventually be dismissed, if discovery yields no identities.' ")); Fed. R. Civ. P. 21.

U.S. 58, 71 (1989).  As such, an employee of the state named as a defendant in a civil rights action may be held liable only if that person has personal involvement in the alleged wrongs and is sued in their personal capacity.  See Hafer v. Melo, 502 U.S. 21, 31 (1991) ("state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983"). Although the Complaint is silent as to the capacity in which these defendants are being sued, the Court will construe the Complaint broadly and consider the claims against these defendants in their individual capacities. Because Mooney is specifically alleged to have acted in his official capacity as to the claims in Count V, the Court will not construe these allegations, having been specifically plead, against Mooney in his individual/personal capacity. See Compl. ¶23.  As a result, summary judgment is granted as to Mooney as to the claims plead in Count V.

Summary judgment is granted as to Defendant Police Department with respect to allegations arising under §1983.  The Police Department is a division of the City and the claims against it merge with the claims against the City.  Generally, public entities that are not separate legal entities, but rather subunits of a local government or municipality, cannot be sued under § 1983.  See, e.g., Peppers v. Booker, Civ. No. 11-3207, 2012 WL 1806170 (D.N.J. May 17, 2012) (noting that "[i]n a Section 1983 claim, police departments may not be named defendants in conjunction with municipalities because police departments are merely instruments of municipalities); Adams v. City of Camden, 461 F. Supp. 2d 263, 266 (D.N.J. 2006); Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997) (holding police department and municipality same for § 1983); N.J. Stat. Ann. § 40A:14-118 (municipal police department is "an executive and enforcement function of municipal government"). Thus, insofar as the Police Department is not a

separate legal entity, but a division of the City, Plaintiff cannot sustain a separate §1983 claim against it and summary judgment is granted.

In her chart, Plaintiff makes reference to claims against the "Aquarium[.]" No such entity is identified in the Complaint; however Plaintiff's Complaint asserts a claim in Count I against "Defendant City of Atlantic City's Gardner's Basin and its Ocean Life Center." See Compl. ¶8.   To the extent Plaintiff seeks to include this entity as a defendant, despite not listing it in the caption, identifying its relationship to the other parties in the Complaint, and/or revealing its corporate structure (see ¶¶ 1-7), the Court is without any facts in the Complaint to consider the nature of the "Aquarium's" enterprise or its relationship to the City.[3]  In addition, neither the "Aquarium" nor the Ocean Life Center were served with a Summons.[4]  As a result, neither the "Aquarium" nor the Ocean Life Center are defendants to this action.

---

[3] Two deponents, Jack Keith and Surita Ducote-Stroud, testified that the City owns the land on which the Aquarium sits, but the Aquarium is managed by a foundation and other space is leased to private businesses. Jack Keith, the Executive Director of the Foundation that manages the Aquarium, testified that the Foundation manages the Aquarium and that the Aquarium is owned by Atlantic City. Keith Dep., Ex. F., 7:22-25-8:1-5, 9:1-13. Keith works for both the Foundation and the City. Id.  The City owns the land and the Foundation is the tenant. Keith Dep., Ex. J. 19:1-4. The Court will consider the nature of Plaintiff's claims to the extent that the City owns the Aquarium, but does not manage it.

[4] Federal Rule of Civil Procedure 10(a) requires that every party to an action be named in the complaint's caption. Fed. R. Civ. P. 10 (a). However, failure to list a party in the caption is not fatal, as long as other indicia provide actual notice of the identity of the parties. See Prisco v. State of New York, 804 F. Supp. 518, 521 (S.D.N.Y.1992); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1321 (2d ed. 1990). Courts look to the "pleadings, service of process and other indications of the intent of the pleader" to determine whether a party is a proper defendant. E.E.O. C. v. Int'l Ass'n of Bridge, Structural, & Ornamental Ironworkers, Local 580, 139 F.Supp.2d 512, 525 (S.D.N.Y. 2001)); see also Dolphin v. Waterbury Police Dep't, No. 3:05CV426 (HBF), 2008 WL 2568667, at *4 (D. Conn. June 24, 2008) ("When a plaintiff omits the name of a defendant from the caption, but accurately identifies the defendant and includes allegations against it, him or her in the body of the complaint, such an omission is viewed as a 'technical defect.'"). Here, Jack Keith, the Executive Director of the Atlantic City Waterfront Foundation, is named in the Caption, was served with a Summons, and was present during some of the events described in Plaintiff's Complaint. It is only in Count I where the Ocean Life Center appears as the scene of events on August 26, 2009. See Compl., ¶9 ("Plaintiff . . . attempted to be a patron at Defendant City of Atlantic City's Gardner's Basin and its Ocean Life Center."  In Count I, Plaintiff identifies the Defendant as the City of Atlantic City. The "Aquarium" and/or Ocean Life Center are not named in the Caption and neither entity was served with a Summons. Thus, the Complaint's only reference to the "Aquarium" in Count I is insufficient to give the actual notice that the Ocean Life Center and/or "Aquarium" is a party to this action.

### A. **Plaintiff's Constitutional Claims: False Arrest, False Imprisonment, Excessive Force, Malicious Prosecution, Failure to Train in Violation of the Fourth and Fourteenth Amendments and the New Jersey Civil Rights Act**

Plaintiff's constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that the plaintiff was deprived of

9

his rights by a person acting under the color of state law.  Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989).

A similar analysis may be made regarding any claim under the New Jersey Civil Rights Act.  See Armstrong v. Sherman, No. 09 CV 716, 2010 WL 2483911, *5 (D.N.J. Jun. 4, 2010) ("[T]he language of the New Jersey Civil Rights Act, like the language of 42 U.S.C. § 1983, appears to grant a cause of action only to those persons whose rights have been personally violated.")[5]

The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

This doctrine "balances two important interests—the need to hold public officials

---

[5] For this reason, the Court will not undertake separate analysis of Plaintiff's claims under the New Jersey Civil Rights Act, to the extent such a claim is alleged in the poorly drafted Complaint. "This district has repeatedly interpreted NJCRA analogously to § 1983." Pettit v. New Jersey, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011). "[W]hen pled together, [the NJCRA and § 1983] are analyzed under the same standard[.]" Id., 2011 WL 1325614 at *4; see also Hottenstein v. Sea Isle City, 793 F.Supp.2d 688, 695 (D.N.J. 2011).

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" and it "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation omitted). Properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden v. Duffy, 446 F.3d 483, 492 (2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. Couden, 446 F.3d at 492 (internal citations omitted). Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley, 475 U.S. at 341 (1986). See also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.) Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant. See Beers-Capital v. Whetzel, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

Here, Plaintiff alleges violations of her Fourth and Fourteenth Amendment rights and there is no dispute that the individual officers were acting under the color of state

law.  Specifically, Plaintiff claims false imprisonment, false arrest, malicious prosecution, and excessive force against the individual police officer defendants Clayton, Bouffard, Herrerias, and Stanton[6].

## 1. **Constitutional Claims**[7]
### a. **False Imprisonment/False Arrest**

To the extent that Plaintiff makes claims of false arrest and false imprisonment against the individual officers, the Fourth Amendment prohibits seizures in the absence of probable cause.[8]  Orsatti v. New Jersey State Police, 71 F.3d. 480, 482 (3d Cir. 1995). Under the Fourth Amendment, a person is seized "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  Michigan v. Chesternut, 486 U.S. 567, 574 (1988) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).  Seizure occurs only when a person is detained by "means intentionally applied" to terminate his freedom of movement by means of physical force or by show of authority.  Brower v. County of Inyo, 489 U.S. 593, 597-98 (1989)  No seizure occurs when a reasonable person would feel free to "disregard the police and go about his business" or where "a reasonable

---

[6] While Stanton's only mention in the Complaint comes as an actor in Count VIII, he is notably left off of Plaintiff's chart.  In addition, Plaintiff states that she "misidentified" Stanton as the Officer who struck her, and believes that the police officer who struck her is Herrierias. See Pl. Opp. Br. and Reply to Def. Stat. Material Facts, ¶ 8. In addition, Officer Herrierias testified that there is no Atlantic City Police Officer named Stanton. Herrerias Dep., Ex. F., 17:13-16.  Summary judgment as to this claim against Officer Stanton, to the extent he is considered as an appropriate defendant, is granted.

[7] Where an amendment provides explicit protection against a particular kind of government action, that amendment is the source of the Court's evaluation of a §1983 claim rather than the general rights granted by the Fourteenth Amendment.  County of Sacramento v. Lewis, 523 U.S. 833, 841 (1998) (citing Albright v. Oliver, 510 U.S. 266, 273 (1994)).  Thus, allegations of false arrest or false imprisonment are evaluated under the Fourth Amendment rather than the Fourteenth Amendment.  See, e.g., United States v. Lanier, 520 U.S. 259, 272 (1997); Berg v. County of Allegheny, 219 F.3d 261, 268-69 (3d Cir. 2000).

[8] Again, Plaintiff never identifies either Amendment in her Complaint, but lists both the Fourth and Fourteenth Amendments as causes of action in her chart.  The Court does not glean the existence of a due process violation from the Complaint and Plaintiff makes no argument suggesting that such a claim exists.  For the reasons set forth in note 7, the Court will analyze the claim under the fourth Amendment.

person would feel free to decline the officers' requests or otherwise terminate the encounter." United States v. Kim, 27 F.3d 947, 951 (3d Cir. 1994) (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)).

Under New Jersey common law, the tort of false imprisonment is defined as when an actor improperly constrains a person's freedom of movement by force or by threats of force communicated through conduct or words. Maietta v. USPS, 749 F. Supp. 1344, 1366 (D.N.J. 1990). New Jersey requires two elements for false imprisonment: (1) detention of the person against his or her will, and (2) a lack of proper legal authority or "legal justification." Mesgleski v. Oraboni, 748 A.2d 1130, 1138 (N.J. Super. Ct. App. Div. 2000).

Under the Fourth Amendment, a claim of false arrest requires a showing "(1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012). Probable cause exists when there are "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (internal citations omitted). Taking the facts in a light most favorable to the Plaintiff Rhonda Abbott, she was both seized, arrested and/or imprisoned under either of the above standards.

The question of whether probable cause existed to arrest and detain Plaintiff is called into question only by Plaintiff's testimony. The overwhelming evidence suggests that Ms. Abbott was acting in a manic and disturbing manner at both the Aquarium and Back Bay Restaurant. Police Officer Herrierias and Jack Keith both testify that at the Back Bay Ale House, Abbott was spitting, yelling, and causing a disturbance. See Keith

13

Dep., Ex. J. 23:6-13 (characterizing Abbott as "out of control"), 24: 7-8 (stating he observed Abbot purposefully spit at police); Herrerias Dep., Ex. F. 11:13-19 (stating Abbott spat at him), 7:1-24 (Abbott was screaming and using profanity as she argued with restaurant staff). Officer Clayton claims that Abbott engaged in manic behavior at the Ale House and was kicking, screaming and spitting that as they tried to talk to her. Clayton Dep., Ex. G, 17:1-25. Clayton also noted Abbott continued to spit and that the plexi-glass divider in the police car was covered in her spit. Id., 17:14-23.

At the Aquarium, Sarita Stroud claims that she wasn't clear that Abbott's dog was service dog and asked Abbott to step aside. Stroud Dep., Ex. E. 14:1-22. Stroud claims that Abbott began screaming that she was going to call her lawyer and would not move aside. Id. Abbott's behavior and screaming escalated, preventing Stroud from having any further conversation with Abbott to get more information about the dog. Id. Jack Keith was called and he testifies that Abbott would not move to the side and she was screaming. He states that Abbott said she was hearing impaired and asked Keith to write his questions out on paper; he attempted to communicate with her in that manner, but she was not cooperative and continued to create a disturbance. Keith Dep., Ex. J., 38:16-25. Stroud testified that during the ten or so minutes it took police to arrive, Abbott yelled the entire time and refused to move to the side to let other patrons gain access. Stroud Dep., Ex. G, 5:1-25. Officer Bouffard testified that as they approached the Aquarium, they could hear Abbott screaming before they visually observed her. Bouffard Dep., 8:18-25-9:1-8 (Abbott was screaming "fuck you, I'm suing"). Bouffard observed Abbott acting in an obnoxious and loud manner toward an Aquarium employee. Id. at 7:4-18.

Clayton elaborated on their interaction with Abbott as they escorted her out of the Aquarium. Clayton testifies that she tried to ask Abbott what the problem was, but Abbott refused to answer. Clayton Dep., Ex. G. 11:18-25.  Instead, Abbott continued to scream that she was going to sue, took her phone out and claimed she was calling her lawyer. Id. at 12:1-4.  At some point, Clayton learned from the Aquarium staff that Abbott's dog was a service dog, but Abbott wouldn't engage in any conversation and continued to yell.  Id. Clayton got the impression that Abbott could hear some of the police officers' conversations with each other because Abbott would interject with relevant responses, even when the officers talked out of Abbott's vision. Id. at 12:11-25-13:1-16.  When Clayton discussed with Herrerias whether to shackle Abbott to curtail the kicking, Abbott responded "Fuck you, you're not going to shackle me." Id. 17:23-25-18:1-4.

However, Abbott's markedly contradictory account of the events of the day create a genuine issue of material fact.  Abbott claims that she was unable to communicate with the staff at the Aquarium and that she was asked to leave because of her dog.  She claims that she did not refuse to pay, because she was harassed before she could discuss payment.  Then, she claims that when she went to the Back Bay Ale House, she informed the hostess that she wished to speak with a manager, so as to preempt any problems that might arise because of her service dog.  While she sat quietly at a table waiting, for some time, for the arrival of the manager, Officer Herrerias came out of nowhere and arrested her.  Abbott Dep., 154:1-25-155:1-25.

Abbott's version of events includes the police officers' refusal to communicate with her in writing, even after she showed them her hearing aid.  With these key facts in

dispute, summary judgment is denied as to the claims against Hererrias, Clayton, and Bouffard as they relate to the activity at the Ale House.  Summary judgment is granted as to Clayton and Bouffard in so far as the Complaint, which is unclear, alleges wrongful arrest at the Aquarium.  For the same reasons, summary judgment is denied on the qualified immunity argument on the issue of probable cause.  Giving Plaintiff the benefit of every inference, the Officers, in responding to claims that she was acting irrationally and in a disorderly manner, came upon a quiet Plaintiff who was minding her own business as she waited for the manager.   As a result, based on those facts, there are questions of fact as to whether probable cause to arrest Plaintiff existed and whether she resisted arrest.

### b.  **Excessive Force**[9]

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized.

A Fourth Amendment excessive force claim calls for an evaluation of whether police officers' actions are objectively reasonable in light of the facts and circumstances confronting him.  Graham v. Conner, 490 U.S. 386, 397 (1989).  While the question of reasonableness is objective, the court may consider the severity of the crime at issue,

---

[9] Graham v. Connor appears to foreclose a claim of excessive force as arising under the Fourteenth Amendment. 490 U.S. 386, 388 (1989) ("This case requires us to decide what constitutional standard governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person. We hold that such claims are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." Accord Abraham, 183 F.3d at 288 ("excessive force in the course of an arrest is properly analyzed under the Fourth Amendment, not under substantive due process") (citing Graham, 490 U.S. at 393-94).

whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Id.  In a claim for excessive force, "the central question is 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

Furthermore, appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.'" Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) (quoting Graham, 490 U.S. at 396). See also Graham, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary," violates the constitution.).

Plaintiff appears to claim that Herrerias violated her right to be free from excessive force and argues that the use of the mask to curtail her involuntary spitting is the basis for this claim.  In regards to the use of the mask, Officer Herrerias is entitled to qualified immunity as its use was objectively reasonable in light of the circumstances.  At the very least, Plaintiff admits that phlegm was caused to exit her mouth as a result of a summer cold over which she had no control.  See Pl. Ex. B, Pl. Verified Answer; Abbott Dep., Ex. D., 182:14-25-183:1-5.  Thus, to the extent that Plaintiff herself admits that she was spewing bodily fluids, under these circumstanced no jury could reasonably find that Herrerias acted "maliciously and sadistically to cause harm.'" Brooks, 204 F.3d at 106 (quoting Hudson, 503 U.S. at 7).  In addition, even if the use of the mask was not in line with ADA standards, "[w]hile the purpose of the ADA is to prevent the discrimination of disabled individuals, we do not think Congress intended that the fulfillment of that

objective be attained at the expense of the safety of the general public." <u>Hainze v. Richards</u>, 207 F.3d 795, 801 (5th Cir. 2000). Whether Abbott's spitting was intentional or involuntary, Herrerias' use of a device to curtail the transmission of bodily fluid is objectively reasonable.  Abbott puts forth no evidence that another method could have been used.  Thus, the conduct of Herrerias was objectively reasonable at the time, under the circumstances, and he is entitled to qualified immunity on the excessive force claim.[10]

Plaintiff's argument that the mask was not "see-through" and that its use, coupled with the fact that she is hearing impaired, caused her to lose the additional sensory function of vision and is therefore excessive does not save her claim.  Plaintiff admits that she tried to get a mask similar to that used by the police when she was arrested but failed.  There is no evidence in the record, but for Plaintiff's statements, that Atlantic City has ever used a different mask.  Likewise, there is no case law on point to suggest that the use of an opaque mask is under the circumstances excessive.  <u>Id.</u> Given that Plaintiff admits to spewing fluids out of her mouth and that she could not control it, the use of the mask is not unreasonable and summary judgment is granted.[11]

---

[10] Although the Court should not weigh evidence or make credibility determinations on summary judgment, it is worth noting that on the point of Abbott's spitting, several other witnesses observed purposeful spitting and the hospital records also indicate that Abbott was uncooperative, combative that she spat, yelled and was agitated. See Atlantic Care Hospital Records, Ex. N.  thus, under the circumstances, coupled with Abbott's admission that she involuntarily spit, Herrerias's conclusion that the mask was necessary is objectively reasonable.

[11] Plaintiff's Count VIII asserts that she was "physically struck" by Officer Stanton and other John Doe Defendants. Since Plaintiff acknowledged that no officer Stanton exists and summary judgment has been granted to the "John Does", the Court will not address this claim.  Plaintiff states in her brief that she believes it was Herrerias, however, a believe or a speculation is insufficient on summary judgment.

c. **Malicious Prosecution**

To establish malicious prosecution under § 1983, a plaintiff must establish that: (1) the defendant initiated a criminal proceeding; (2) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding; (3) the criminal prosecution resulted in plaintiff's favor; (4) the proceeding was initiated without probable cause; and (5) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice. Halsey v. Pfeiffer, 750 F.3d 273, 296-97 (3d Cir. 2014); DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005); Santiago v. City of Vineland, 107 F. Supp. 2d 512, 566 (D.N.J. 2000).

Here, given the questions of fact related to probable cause, summary judgment on this claim is denied.

2. **Monell Claims**

A municipality is not liable under 42 U.S.C. § 1983 on a respondeat superior theory. Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691 (1978). However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind, the alleged violation of Plaintiff's rights. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Policy or custom may be established in two ways. "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such

practices of state officials [are] so permanent and well settled' as to virtually constitute law." Id. (citations omitted). Custom requires proof of knowledge and acquiescence by the decisionmaker. McTernan v. City of York, PA, 564 F.3d 636, 657 -658 (3d Cir. 2009). Moreover, supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," or if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010) (citations omitted).  Thus, in order to prevail against the government entity, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).  Further, a plaintiff must show that the municipality acted with "deliberate indifference" to the known policy or custom.  Canton v. Harris, 489 U.S. 378, 388 (1989).  "A showing of simple or even heightened negligence will not suffice." Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. at 397, 407 (1997).

Finally, to prevail on a failure to train, discipline or control claim, a plaintiff must "show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."  Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998) (citations omitted). The Supreme Court notes that in "limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid

violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).

To sustain a failure-to-train claim under § 1983, a plaintiff "must (1) identify the deficiency; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency reflected deliberate indifference on the part of the municipality." Lapella v. City of Atlantic City, 10-2454, 2012 WL 2952411, at *6 (D.N.J. July 18, 2012) (citing Malignaggi v. County of Gloucester, 855 F.Supp. 74, 77 (D.N.J. 1994)). Only when a plaintiff demonstrates deliberate indifference to the rights of persons with whom the untrained employees come into contact "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Connick, 131 S. Ct. at 1359-60 (internal citation omitted).

Deliberate indifference is "a stringent standard of fault" that requires proof that a municipal actor disregarded a known or obvious consequence. Id. (citing Board of Cty Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 410 (1997)). Thus, for purposes of a failure to train claim, it is "ordinarily necessary" for a plaintiff to show "[a] pattern of similar constitutional violations by untrained employees." Connick, 131 S.Ct. at 1360 (internal citation omitted). The Third Circuit has noted that:

> [A] municipality's deliberately indifferent failure to train is not established by (1) presenting evidence of the shortcomings of an individual; (2) proving that an otherwise sound training program occasionally was negligently administered; or (3) showing, without more, that better training would have enabled an officer to avoid the injury-causing conduct.

Simmons v. City of Philadelphia, 947 F.2d 1042, 1060 (3d Cir. 1991) (citing City of Canton v. Ohio, 489 U.S. 378, 391 (1989) (emphasis in original)). A "single-incident" theory of liability can proceed only upon demonstration that the constitutional violation

was the "obvious" consequence of inadequate training. Connick, 131 S.Ct. at 1360–61 (citations omitted); see also, City of Canton, 489 U.S. at 390, n. 10.  However, such a "single incident" theory of liability only arises "in a narrow range of circumstances." Id. at 1361.

Here, although Plaintiff highlights the existence of a potential training deficiency in dealing with the hearing-impaired population, she has failed to prove that these alleged deficiencies constitute a pattern or practice and/or that the deficiency caused a constitutional violation in this case.  See, e.g., McTernan v. City of York, Pa., 564 F.3d 636 (3d Cir. 2009) ("[A plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was.").   The record does not support the allegation that the municipality's deliberate indifference or failure to train in dealing with the hearing impaired population encouraged or caused the unlawful conduct of its officers. Connick, 131 S. Ct. at 1359-60.

If Plaintiff is to be believed, she was arrested while sitting quietly at the Back Bay Ale House.  Plaintiff makes a scant connection to the events at the Aquarium when she testifies that a random stranger told her to "get out of here" because the police were looking for her. See Pl. Ans. To Interrogatories, ¶1, pp 26-7; Pl. Amended Ans. To Interrogatories, ¶1, p. 32.  Plaintiff testifies that she was sitting quietly and not arguing with anyone when she was approached by Herrerias and Clayton. Abbott Dep., Ex. D., 158:8-25.   She states that she had to "struggle" to communicate, she took out her hearing aid, and then "Officer Herrerias jumped me and arrested me." Id. at 159:1-25-160:1-5.

Plaintiff cannot show that this single incident is the "obvious" consequence of inadequate training and falls into the "narrow range of circumstances" where liability may attach.  Here, Plaintiff admits that she was able to verbally communicate and receive some verbal communications and that her dog lacked identification that he was a service dog. <u>Connick</u>, 131 S.Ct. at 1360–61 (citations omitted); <u>see also</u>, <u>City of Canton</u>, 489 U.S. at 390, n. 10.  Plaintiff points to no evidence of what training would have prevented the arrest in her case.  Plaintiff's only evidence in support of her claim is the testimony of the police officers stating that they cannot recall if they received training on dealing with the hearing impaired.  She provides no evidence of the type of training that would have prevented her encounter.  Summary judgment is granted in favor of the City on these claims.

### B.  <u>Violation of Section 504 of the Rehabilitation Act and the ADA</u>

Like the majority of the Complaint, Plaintiff's claims under the ADA and Section 504 are generically made without specific reference to the offense and the offending parties.  Counts I, II, II, IV, and VIII reference violations of the ADA and Section 504. The Complaint makes no distinction as to which Title of the ADA Plaintiff moves with respect to the myriad of defendants Plaintiff claims violated her rights under these statutes. Adding to the confusion is Plaintiff's claims chart, which references only Title II of the ADA.  Plaintiff's Answer to Interrogatories states that she is making both Title II and Title III claims, but fails to delineate the nature of each claim as to each defendant.

1. Claims under Title II of the ADA and Section 504 of the Rehabilitation Act

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132.  Title II prohibits discrimination by, and imposes liability on, "public entities." See 42 U.S.C. ¶ 2132.  A public entity is defined in the statute as "any State or local government; ... department, agency special purpose district, or other instrumentality of a State...." 42 U.S.C. § 12131(1).

Section 504 of the Rehabilitation Act prohibits programs that receive federal funds from discriminating against an individual based on disability: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . ."  29 U.S.C. § 794(a); see Bowers v. National Collegiate Athletic Ass'n, 118 F.Supp.2d 494, 525 (D.N.J. 2000) (quoting 29 U.S.C. § 794(a)).

There is no reference in Title II or Section 504 to liability against individuals for violation of the act. See Doe v. Div. of Youth & Family Servs., 148 F. Supp. 2d 462, 489 (D.N.J. 2001); Yeskey v. Pennsylvania, 76 F. Supp. 2d 572, 575 (M.D. Pa. 1999). Indeed, neither Section 504 nor Title II of the ADA provides a cause of action against government employees in their individual capacities. See Americans with Disabilities Act of 1990, §§ 201(1), 202, 42 U.S.C.A. §§ 12131(1), 12132.  Therefore, there is no individual liability under these statutes for public employees. See A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to Section

504 against recipients of federal financial assistance, but not against individuals.")
(citing Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002)); see also K.J. v. Greater
Egg Harbor Reg'l High Sch. Dist. Bd. of Educ., No. 14-CV-145, 2015 WL 1816353, at *7
(D.N.J. Apr. 21, 2015) (citing Calloway v. Boro of Glassboro Dep't of Police, 89
F.Supp.2d 543, 557 (D.N.J. 2000) (citing cases from other districts and circuits for the
proposition that "individual defendants cannot be held liable for violations of Title II of
the Disability Act"); see also Emerson, 296 F.3d at 189 (citing Walker v. Snyder, 213
F.3d 344, 346 (7th Cir. 2000) (finding that "the ADA addresses its rules to employers,
places of public accommodation, and other organizations, not to the employees or
managers of these organizations"), and Garcia v. S.U.N.Y. Health Sciences Ctr., 280
F.3d 98, 107 (2d Cir. 2001) (holding that individuals are not liable under Title II),
approvingly, and noting that the Rehabilitation Act and the ADA are "generally …
interpreted consistently.")).

> To prove a violation of Title II of the ADA, a plaintiff must show:
>
> (1) he [is] a "qualified individual with a disability"; (2) he was either
> excluded from participation in, or denied the benefits of, … [defendant]'s
> services, programs, or activities, or was otherwise discriminated against by
> … [defendant]; and (3) such exclusion, denial of benefits, or discrimination
> was by reason of his disability.

Calloway v. Boro of Glassboro Dept. of Police, 89 F.Supp.2d 543, 552 (D.N.J. 2000); see
also Douris v. Dougherty, 192 F. Supp. 2d 358, 368 (E.D. Pa. 2002).

To the extent that Plaintiff is a "qualified individual," liability under these
statutes may be sought against any defendant who owns and maintains the park as a
"public entity" which receives federal funds. 42 U.S.C.A. §§ 12131(1), (2). Thus, the City

of Atlantic City is the only potential defendant to this claim, as there is no viable claim against individuals under these statutes.

With respect to the Section 504 claim, Plaintiff puts forth no evidence to suggest, and does not allege, that the City receives federal funds. For this reason, her Section 504 claim against the City fails.  Likewise, her Title II claim is tenuous at best, even if Plaintiff could prove she has Article III standing: on this record there is no evidence that Plaintiff has standing and summary judgment is granted.

The party invoking federal jurisdiction bears the burden of establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the matter and degree of evidence required at successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations omitted); see Focus v. Allegheny County Ct. of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996). At the summary judgment stage, Plaintiff cannot rest on mere allegations to establish standing, "but must 'set forth' by affidavit or other evidence, 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." Lujan, 504 U.S. at 561 (citing Fed. R. Civ. P. 56(e)). Thus, to defeat summary judgment, the plaintiff must raise a genuine issue of material fact as to whether the requisite standing elements are satisfied. Celotex, 477 U.S. at 322.

The general requirements of standing are also applicable in ADA cases where, as here, Plaintiff brings suit seeking injunctive relief for violations of Titles II and III. See Transport Workers Union of America, Local 100, AFL-CIO v. New York City Transit Authority, 342 F. Supp. 2d 160, 165-66 (S.D.N.Y. 2004) (Article III standing required in

26

Title II cases); <u>Doe v. Natl. Bd. of Med. Examr's</u>, 199 F.3d 146, 153 (3d Cir. 1999) (Article III standing applies in Title III cases). To satisfy the Constitutional standing requirements Plaintiff must show: she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. <u>Friends of the Earth, Inc.</u>, 528 U.S. at 180–81.

A party seeking prospective injunctive relief must demonstrate a real and immediate, i.e., not speculative, threat of future harm. <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). A plaintiff seeking injunctive relief must also show continuing, adverse effects from the illegal conduct. <u>O'Shea v. Littleton</u>, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). A plaintiff's "some day" intentions to return to the source of the illegal conduct, without any description of concrete plans, does not support a finding of "actual or imminent" injury. <u>Lujan</u>, 504 U.S. 564; <u>see also</u> <u>Dempsey v. Pistol Pete's Beef N Beer, LLC</u>, Civ. No. 08–5454, 2009 WL 3584597 at *4 (D.N.J. Oct. 26, 2009) ("[I]ntentions to return to the source of the illegal conduct 'some day'-without any description of concrete plans, or indeed even any specification of when the some day will be-do not support a finding of the requisite actual or imminent injury.").

Although there is no Third Circuit precedent directly addressing the contours of the "injury in fact" analysis in ADA cases, several courts in this district have recognized that, it in other contexts, the Third Circuit requires that "a [p]laintiff must suffer a palpable and distinct harm that must affect the plaintiff in a personal and individual

27

way." Brown v. Showboat Atlantic City Propco, LLC, Civ. No. 08–5145, 2010 WL 5237855, at *7 (D.N.J. Dec.16, 2010) (quoting Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009)); see also Louisiana Counseling and Family Services Inc. v. Mt. Fuji Japanese Restaurant, No. 08-CV-6143, 2014 WL 94135 (D.N.J. Mar. 11, 2014). As a result, the standing analysis in ADA cases focuses on whether the plaintiff suffered an actual injury rather than whether the statute was violated by the defendants. See Doe, 199 F.3d at 153.

As this Court recognized in Louisiana Counseling, courts in New Jersey have applied the following four-factor test to determine whether a future injury is concrete and particularized: (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the plaintiff's frequency of nearby travel; and (4) the definiteness of the plaintiff's plan to return. Brown, Civ. No. 08–5145, 2010 WL 5237855, at *8. With respect to the definiteness to return, the Court in Lujan found that "someday" intentions without any description of concrete plans, or even any speculation of when the someday will be-do not support a finding of actual or imminent injury. Id. (citing Lujan, 504 U.S. at 564). On a summary judgment motion the burden is higher than on a motion to dismiss where "general factual allegations of injury resulting from the defendant's conduct may suffice ... on a motion to dismiss [as] we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Lujan, 497 U.S. at 889.

Here, one of the many bases for Defendants' summary judgment motion is the lack of any evidence that Plaintiff intends to return to the City or to Gardner's Basin. In its statement of Material Facts, Defendants claim that Plaintiff has declared that she has

no intent to return to the City, undermining her standing to bring these claims.  In support of this "fact," Defendants cite to an email exchange regarding the location of the depositions in which Defendants' counsel summarizes Plaintiff's counsel's alleged unwritten assertion that Ms. Abbott refuses to return to Atlantic City, even to be deposed, because she is fearful.  <u>See</u> Polis Cert., Ex O.  Defendants' counsel's recapitulation of a possible verbal conversation with Plaintiff's counsel is unavailing evidence of Plaintiff's intent- or lack thereof- to return.  However, Plaintiff's response is at most an unsubstantiated "general allegation" that fails to satisfy the standing requirements.

Here, Plaintiff states that she resided in Willingboro, New Jersey and that she is currently in between residences.  <u>See</u> Abbott Dep., Ex. C., 13:3-25-14:1-25.  Willingboro is approximately forty-five minutes to an hour away from the City.  Plaintiff claims that she had been to Gardner's Basin at least once before but there is no testimony that she intends to return. The only mention of Plaintiff's intent to return comes from her attorney in response to Defendants' Statement of Material Facts:

> 11. Denied. Plaintiff would like to return to Atlantic City and Gardner's Basin after her lawsuit is resolved.

Plaintiff's Response to Def. Stat. of Material Facts, ¶11.  Plaintiff's response fails to cite to any testimony, affidavit, or other certification to corroborate the generalized statement that Plaintiff "would like to" return to the City.  Such a statement is not evidence on summary judgment and, alternatively, fails to vault the "someday intentions" standing hurdle described in <u>Lujan</u>. <u>See</u> <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of

Art. III. A threatened injury must be certainly impeding to constitute injury in fact");
Access 4 All v. Oak Spring, Inc., No. 504CV75OCGRJ, 2005 WL 1212663, * 5 (M.D.Fl.
May 20, 2005) (noting that absent a specific intent to return, a general statement
expressing an intent to return is not sufficient to establish standing). As a result,
summary judgment is granted as to the Title II claim under the ADA.

Even if Plaintiff could satisfy standing, summary judgment is granted because
there is no evidence that the City discriminated against her because of her disability.
The Aquarium and Back Bay Ale Houses are located on City property, but are managed,
owned or leased to private entities, which have not been named as defendants in this
lawsuit. In addition, under the circumstances here, it is not clear that the officers were
not able to communicate with plaintiff, and even if the method was not in line with ADA
standards, in responding to several sources of information from the different
establishments indicating that Plaintiff was acting out of control, the police officers
alleged failure to provide effective written communiation under the circumstances did
not violate the ADA. See Hainze v. Richards, 207 F.3d at 801.  As a result, summary
judgment is granted as a matter of law as to Plaintiff's claims against the City with
respect to the actions of Defendants Keith, Clayton, Bouffard, and Herrerias on
Plaintiff's Title II and Section 504 claims.

2.   Title III of the ADA and the NJLAD

Title III of the ADA prescribes, as a "[g]eneral rule":

"No individual shall be discriminated against on the basis of disability in the
full and equal enjoyment of the goods, services, facilities, privileges,
advantages, or accommodations of any place of public accommodation by

> any person who owns, leases (or leases to), or operates a place of public accommodation."

42 U.S.C. § 12182(a).

For the same reasons stated above with respect to Plaintiff's Title II and Section 504 claims, Plaintiff fails to satisfy her burden of proving standing and summary judgment is granted in favor of the Defendants as to the Title III claims.  In addition, Plaintiff fails to name a place of public accommodation as a defendant in this matter.  However, she names Jack Keith, who is the Executive Director of the Foundation which operates the Aquarium.  Although the Ale House sits on Garner's Basin, there is no evidence suggesting that Keith has any function with respect to the operation of that restaurant.   As a result, her only potential claim under Tile III comes against Keith.  Because the Court finds that Plaintiff lacks standing to bring this claim, summary judgment is granted.

### 3. NJLAD Claims

The NJLAD, N.J.S.A. § 10:5, prohibits discrimination against disabled persons.  Any qualified individual possesses standing to assert claims under the NJLAD.  Like Title III claims, the NJLAD provides that "[a]ll persons shall have the opportunity ... to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation" without discrimination on the basis of disability.  To that end, N.J.S.A. 10:5–12 provides, in relevant part:

> It shall be ... an unlawful discrimination:
>
> f. (1) For any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof....

Courts consistently look to federal law for guidance in interpreting claims under the NJLAD. Borngesser v. Jersey Shore Med. Ctr., 340 N.J.Super. 369, 380, 774 A.2d 615 (App. Div. 2001) (applying federal law under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701–796, as guidance on a LAD claim) (citing Leshner v. McCollister's Transp. Sys., Inc., 113 F.Supp.2d 689, 691–92 n. 1 (D.N.J. 2000); Ensslin v. Twp. of N. Bergen, 275 N.J.Super. 352, 363–64, 646 A.2d 452 (App. Div. 1994), certif. denied, 142 N.J. 446, 663 A.2d 1354 (1995)); see also Chisolm v. McManimon, 275 F.3d 315, 324 n. 9 (3d Cir. 2001) (confining discussion to ADA Title II "with the understanding that the principles will apply equally to the Rehabilitation Act and NJLAD claims"). Most often, courts refer to the provisions of the ADA or § 504 of the Federal Rehabilitation Act ("RA") of 1973. See Chisolm, 275 F.3d at 325 n. 9 (looking to the ADA for guidance); Borngesser v. Jersey Shore Med. Ctr., 340 N.J. Super. 369, 774 A.2d 615, 621 (N.J. Super. 2001) (relying on § 504 of the RA); Hall, 777 A.2d at 1009 ("For the purpose of this analysis, there are no significant distinctions between the RA and LAD claims."). Federal law requires that places of public accommodation furnish members of the deaf community with an "appropriate auxiliary aid." Chisolm, 275 F.3d at 326 (citing 28 C.F.R. § 35.160(a)) (discussing Federal Regulations with respect to the ADA).

Plaintiff lacks standing to bring this claim for the same reasons that are fatal to her ADA claim because there is no evidence in the record to support a prima facie case of discrimination under the NJLAD.  Plaintiff has failed to put forth evidence that she faces a "real and immediate threat of future harm necessary for standing for prospective

relief-the only relief[.]" Cottrell v. Bobs Little Sport Shop, Inc., No. 09-CV-1987, 2010 WL 936212, at *3 (D.N.J. Mar. 11, 2010) (citing 42 U.S.C. §§ 12203(c), 12188; Cottrell v. Zagami, LLC, No. 08-3340, 2009 WL 1416044, at *3 n. 1 (D.N.J. May 20, 2009))(other citations omitted); see also Brown v. Fauver, 819 F.2d 395, 400 (1987). As a result, for the same reasons Plaintiff lacks standing to assert a claim under the ADA, Plaintiff cannot establish standing under the NJLAD and summary judgment is granted in favor of Defendants. Id.

### IV.    Conclusion

For the reasons stated herein, summary judgment is granted as to all claims against Jack Keith and the Atlantic City Police Department, Police Officers Herrerias, Bouffard, and Clayton in their official capacities, and Chief Mooney under §1983. Summary judgment is granted as to the City of Atlantic City as to all claims under §1983 for municipal liability and the claims under the American with Disabilities Act, Section 504 of the Rehabilitation Act, and the New Jersey Law Against Discrimination. Summary Judgment is denied as to the claims against Police Officers Herrerias, Bouffard, and Clayton, in their individual capacities, pursuant to §1983 as to the claims of false imprisonment and false arrest and malicious prosecution.  Summary judgment is granted with respect to Plaintiff's claims under the Fourteenth Amendment and Fourth Amendment Excessive Force Claim.

An appropriate Order shall issue.

Date: March 27, 2017

s/ Joseph H. Rodriguez
HON. JOSEPH H. RODRIGUEZ,
United States District Judge